In the Matter of PROVINCETOWN BOSTON AIRLINE, INC., Debtor.

PROVINCETOWN BOSTON AIRLINE, INC., Plaintiff,

v.

Sidney M. MILLER and Peter M. Zollman, Defendant.

Bankruptcy No. 85–617.
Adv. No. 85–159.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 14, 1985.

 

Paul D. Moore, Foley, Hoag & Eliot, Boston Mass., and Harley E. Riedel, Stichter & Riedel, P.A., Tampa, Fla., for plaintiff.

Thomas H. Seymour, Miami, Fla., for defendant, Peter M. Zollman.

Albert I. Gordon, Tampa, Fla., and Jeffrey W. Herrmann, Saddlebrook, N.J., for defendant Sidney M. Miller.

## ORDER ON COMPLAINT FOR INJUNCTIVE RELIEF

ALEXANDER L. PASKAY, Chief Judge.

THE MATTERS under consideration bring into focus a question raised with increasing frequency in Chapter 11 cases, the scope and reach of the automatic stay and limits of the extraordinary power granted by § 105 of the Bankruptcy Code.

These questions are usually presented by parties who either seek relief from the automatic stay for "cause" pursuant to § 362(d)(1) of the Bankruptcy Code, e.g. *In re Phelia Associates, Inc.*, 26 B.R. 235 (Bk.W.D.Ky.1982), or by debtors who seek to protect not the debtor itself, but others who are involved with the Debtor usually but not always in a capacity of a principal of the Debtor. e.g. *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y.1984); *In re Holtkamp*, 669 F.2d 505 (7th Cir.1982); *In re Penn-Dixie Industries*, 6 B.R. 832 (S.D. N.Y.1980); *In re McGraw*, 18 B.R. 140 (W.D.Wis.1982). This is precisely what is involved in this Chapter 11 case commenced by Provincetown-Boston Airlines, Inc. (PBA), the Debtor who filed its petition for reorganization on March 14, 1985.

The facts relevant to the issues raised by the Motions for Relief and by the Complaint seeking injunctive relief as they appear from the record are without dispute and can be summarized as follows:

PBA, prior to the commencement of this Chapter 11 case, was one of the largest, if not the largest, operator of a commuter airline headquartered in Naples, Florida. On December 20, 1984, Sidney M. Miller (Miller), a holder of shares of PBA's common stock, filed a class action in the United

States District Court for the Southern District of New York on behalf of himself and some other holders of PBA's common stock.

The suit named as Defendants: Debtor, Peter H. Van Arsdale, C. Bill Gregg, Ernest R. Preston, Jr., Philip L. Thomas, Maurice P. Morrissette, Jr., John C. Van Arsdale, Jr., Edwin J. Putzell, Jr., Frederick R. Valentine, John E. Zate, Jean E. Ferrone, Mary E. Van Arsdale, William G. Van Arsdale, and E.F. Hutton & Company, Inc. On March 14, 1985, or a day after the commencement of this case, Peter M. Zollman (Zollman) filed a similar suit in the United States District Court for the Southern District of Florida and named as defendants all the defendants named in the Miller suit except Jean E. Ferrone, Mary E. Van Arsdale, and William G. Van Arsdale. Neither the Miller nor the Zollman action has been certified so far by the respective district courts pursuant to FRCP 23 as a proper class actions. The allegations in both suits center around PBA's conduct of its airline operation. Specifically, it's alleged by Miller and Zollman that PBA failed to disclose in its prospectus accompanying its initial public offering through the Defendant, E.F. Hutton, a well-known brokerage house, a member of the New York Stock Exchange, charges and the existence of administrative actions initiated by the FAA against PBA which actions resulted in the revocation of PBA's operating certificate.

Both Miller and Zollman seek money damages and recission of the sale of the stock sold with the initial public offering and purchased by Miller and Zollman. The claims of the Plaintiffs are basically identical and are based on alleged violation of § 12(2) of the Securities Act of 1933; on the anti-fraud provisions of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982); on common law fraud and on common law negligence and misrepresentations in connection with the sale of the stock.

The relief sought by Miller is against PBA and E.F. Hutton, the lead underwriter of the public offering and nine present and former directors of PBA who signed the registration statement filed by PBA with the SEC. Except PBA, none of the other defendants named as defendants sued by Miller and Zollman are debtors involved in any case currently pending under any of the operating chapters of the Bankruptcy Code. Four of the Defendants named in the Miller suit, E.F. Hutton, Ferrone, Mary E. Van Arsdale and William G. Van Arsdale, were at no time directors, officers or employees of PBA.

As noted, the Zollman suit was filed after the commencement of the Chapter 11 case, thus, it was clearly a violation of the automatic stay as the suit relates to PBA. Zollman, in recognition of this undeniable fact filed a motion with the District Court to drop PBA as party-defendant. On April 25, 1985, the District Court for the Southern District of Florida granted the motion and dismissed the complaint against PBA without prejudice.

Both Miller and Zollman wasted no time and filed their respective motions for relief from the automatic stay for "cause" pursuant to § 362(d)(1). PBA recognizing the obvious that the automatic stay in Chapter 11, unlike in Chapter 13, does not protect non-debtors, filed a complaint pursuant to § 105 of the Bankruptcy Code and sought a preliminary injunction against Miller and Zollman in order to prevent them from prosecuting their respective actions against not only PBA but also against the non-debtor defendants named in the two class actions.

Considering first the Motions for Relief from Stay, the statutory grounds for relief from stay should be noted. Section 362(d) of the Bankruptcy Code sets forth the circumstances in which the Court may grant relief from the automatic stay. This Section, in pertinent part provides as follows:

§ 362. Automatic Stay

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by

terminating, annulling, modifying or conditioning such stay—

(1) for cause ...

"Cause" is not defined by the Code, but the legislative history of this section indicates that the term is intended to be a flexible concept:

> The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause. As noted above, a desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case ... the facts of each request will determine whether relief is appropriate under the circumstances.

H.R.Rep. No. 595, 95th Cong., 1st Sess., 343 (1977), *Reprinted in* (1978) U.S. Code Cong. & Ad. News 5787, 6300.

> In a similar vein a Senate report noted: [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

Senate Rep. No. 989, 95th Cong., 2nd Sess., 50, *Reprinted in* (1978) U.S. Code Cong. & Ad. News 5836.

For instance, the courts in numerous jurisdictions have recognized Congress' clear intention to allow previously filed actions to continue despite the automatic stay provisions of § 362(a).

Courts had no difficulty granting the relief for "cause" where the moving party either sought relief in order to liquidate in a non-bankruptcy forum an unliquidated claim against the debtor, or in order to proceed against a non-debtor in an action where the debtor would only be a nominal defendant, albeit, an indispensable party. This situation is present in suits where the claim against the Debtor is covered by insurance and the plaintiff merely seeks recovery against the insurance carrier who is actually defending the action. In such a situation, the Debtor's participation is nominal the suit does not pose a financial burden on the debtor and has no meaningful negative impact on the Debtor's efforts to effectuate a reorganization.

In the case of *In re Data Access Systems, Inc.*, Civil Action No. 83–00358 (D.N. J.1983) the district court was faced with the identical situation with the one presently before this Court in this case. *Data Access* involved a shareholders class action and sought damages for alleged violations of the federal securities laws, the same claims asserted by Miller and Zollman in their respective class actions. The District Court in *Data Access* granted the motion of the Plaintiffs and permitted the continuation of the class action up to the point of entry of a judgment, but prohibited the plaintiffs from enforcing any judgment against properties of the estate of the debtors in the event they prevailed in the class action. The District Court noted that the main criterion for determining whether or not to grant the relief depended on two factors: (1) whether the action sought to be prosecuted was connected with the reorganization proper or (2) whether the suit, if continued, would interfere with the bankruptcy proceedings. After having considered the record, the District Court concluded that:

> Permitting thre [sic] securities litigation to go forward against DASI to determine liability only would not do harm to the policies underlying the automatic stay provision of Section 362. The two fundamental purposes of Section 362(A) are (1) to give the debtor a 'breathing spell' from its creditors and (2) to provide an orderly procedure for creditors by forestalling a madcap scramble for the debtor's assets. See H.R.Rep. No. 595, *Supra* at 340, *Reprinted in* (1978) U.S. Code Cong. & Ad News 5840.... The Court is convinced that permitting the securities litigation to go forward against DASI would not prejudice these activities. The court will also insure that

the creditors are not given disproportionate treatment. (emphasis as in document)

Other courts which considered the identical question also rejected the "undue burden" argument advanced by debtors in opposition to the Motion. *In re Zeckendorf*, 326 F.Supp. 182 (S.D.N.Y.1971), a pre-Code case; *In re Hoffman*, 33 B.R. 937 (Bky. W.D. Okla 1983); *In re Lagrotteria*, 42 B.R. 867 (Bkrtcy.N.D.Ill.1984). This Court, when considering the same issue, also granted the motion for "cause". *In re Uiterwyk Corp.*, No. 83–166, slip op. (Bkrtcy. June 19, 1984).

■ In the instant case, the liquidation of the claims of Miller and Zollman is essential to any effective reorganization. These claims are without doubt unliquidated and they will have to be liquidated either through litigation or otherwise. These claims against PBA also represent a part and parcel of the claims asserted against the non-debtors. PBA itself concedes that without PBA as defendant in those lawsuits, the prosecution of the claims against the non-debtors would be sorely hampered if not made impossible because of the need to conduct extensive discovery involving PBA. For these reasons, this Court ordinarily would not hesitate to grant the motions by Miller and Zollman and would lift the stay at once. However, in light of the fact that this reorganization is still in the embryonic stage and so are the class actions, it would not be appropriate at this time to permit Miller and Zollman to bombard PBA with every discovery weapon available under the Federal Rules of Civil Procedure. In recognition of this, Miller in fact entered into a stipulation with PBA and agreed that while Miller may proceed with the process of obtaining a certification of the class, it will not otherwise proceed with the suit, especially with discovery at this time. In return, PBA agreed that if no plan of reorganization is filed by PBA on or before December 31, 1985, the automatic stay will be lifted for all purposes. There is no similar stipulation by Zollman and Zollman insists on having the right to proceed with his class action without any further interference from this Court against PBA. However, this Court is satisfied there is no just reason why Zollman should not also be bound by the automatic stay and restrained from conducting his class action, at least temporarily, against PBA.

■ Considering next the relief sought by PBA its complaint filed against Miller and Zollman, PBA concedes, as it must, that the protection afforded by § 362 of the Bankruptcy Code, is not available to non-debtors, even though they may be connected with or affiliated with a debtor who is involved in a proceeding under any of the operating chapters of the Code. For this reason, PBA itself instituted an adversary proceeding and sought the protection of numerous non-debtors who have been named as Defendants in the suit filed by Miller and Zollman. In its complaint, PBA seeks to invoke § 105 of the Bankruptcy Code, which provides that a bankruptcy court may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of Title 11." This Section is merely a restatement of the provisions of the All-Writ Statute, 28 U.S.C. § 1651, and while it does not use the term "injunction", there is no longer any doubt that the relief available under this Section is, in fact, in the nature of an injunction and, as such, is governed by the principles which govern injunctions in general. *In re Otero Mills, Inc.*, 25 B.R. 1018 (D.N.M.1982); *In the Matter of Johns-Manville Corp.*, 26 B.R. 405 (Bankr.S.D.N.Y.1983); *Doran v. Salem, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *In re Brookfield Tennis, Inc.*, 29 B.R. 1 (E.D.Wisc.1982); *In re Larmar Estates, Inc.*, 5 B.R. 328 (Bankr.E.D.N.Y.1980).

It is well established that in order to prevail on a motion for preliminary injunction, the party seeking the relief must establish the following: (1) a strong probability of success on the merits; (2) irreparable injury to the movant if the relief sought is not granted; (3) injunctive relief granting will not cause substantial harm to the party

against whom the injunctive relief is granted; and (4) the public interest will be best served by issuing the preliminary injunction. *Landmark II v. Banc-Ohio National Bank,* 19 B.R. 556 (Bankr.N.D.Ohio 1982); *In re Vantage Petroleum,* 25 B.R. 471, 477, 9 BCD 1248, 125 (Bkrtcy.E.D.N.Y. 1982); See, *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *United States v. Siemens Corporation,* 621 F.2d 499, 505 (2d Cir.1980); *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Friarton Estates Corp. v. City of New York,* 681 F.2d 150, 152 n. 2 (2d Cir.1982); See generally, Mulligan, *Forward-Preliminary Injunction in the Second Circuit,* 43 Brooklyn L.Rev. 831 (1977).

These requirements are in the conjunctive and all of them must be established in order to obtain the relief sought. *In re Electronic Theatre Restaurant Corp.,* CCH ¶ 70582 (N.D.Ohio 5/22/85). It is clear that the relief in the nature of a permanent injunction is an extraordinary and drastic remedy which should not be routinely granted except upon a clear showing that the movant has carried the heavy burden. *United States v. State of New York,* 552 F.Supp. 255, 261 (N.D.N.Y. 1982); (quoting *Buffalo Forge Company v. Ampco-Pittsburg Corporation,* 638 F.2d 568, 569 (2d Cir.1981). As stated in the case of *Johns-Manville Corp., supra:*

"The court found that the granting of injunctive relief through the broad equitable powers of § 105 must be governed by the traditional requirements for granting of preliminary injunctions ... a party seeking the equitable relief of an extension of the stay must satisfy the requirements of FRCP 65 [3] as applied to bankruptcy by Rule 765 of the Rules of Bankruptcy Procedure. The co-defendants here must show that without the sought-after relief, they will suffer irreparable injury and that they are likely to prevail on the merits. See, *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975);

*In re Otero Mills, Inc.,* 21 B.R. 777 at 778–79 (Bkrtcy.D.N.M.1982)."

This proposition is well supported by not only case law, but by a well respected authority on the subject. As stated in 2 *Moore's Federal Practice,* ¶ 65.04[1] at 65–39 (2d Ed.1982):

"[T]he ... court may, in the exercise of its discretion, properly grant an interlocutory injunction when it is satisfied that there is a probable right and a probable danger and that the right may be defeated, unless the injunction is issued; and that the plaintiff is in substantial need of protection; and that the damage to him, if the injunction is denied, plainly outweigh any forseeable harm to the defendant."

From the foregoing, it is evident that no injunctive relief should be granted pending confirmation of a Chapter 11 plan protecting a non-debtor, i.e. an outside party, unless the traditional test for issuance of preliminary injunctions is met. *In re Brookfield Tennis, Inc., supra* and *In re Larmar Estates, Inc., supra.* Thus, unless there is a persuasive showing that the debtor itself will suffer irreparable harm if the proceedings are permitted to go forward against a non-debtor, the debtor failed to meet its burden and no injunctive relief would be justified.

There are, generally speaking, two instances in a Chapter 11 case when injunctive relief was found to be justified of course, only on a temporary basis. One, when a principal of a debtor who himself is not a debtor, is a key person and as such should be protected against lawsuits in order to enable him to devote his full time and energy to the affairs of a debtor, especially at the initial stage of the proceeding. Thus, upon showing that his time and energy is needed in order to allow him to tend to the affairs of a debtor and to allow him to devote his full time to formulating a plan of reorganization, such non-debtor principal may be entitled to temporary protection. The second instance when injunctive relief was justified was when the individual non-debtor owned assets which ei-

ther were to be used as a source to fund the plan through liquidation or when the preservation of his credit standing played a significant and meaningful role in a debtor's attempt to achieve reorganization. In such situations, injunctive relief was issued to protect the individual at least until the necessary financing to fund the plan of reorganization was secured. *In re Otero Mills, Inc., supra.*

■ Applying these general principles to the facts involved in the present instance, this Court is satisfied that none of the Defendants named in the Miller and Zollman suits with the possible exception of the President of PBA, Mr. Peter Van Arsdale, are entitled to any protection sought by PBA in its complaint. Several of the Defendants were never officers, directors or stockholders of PBA. Several were in the past, but no longer are. Some of them, such as E.F. Hutton, had none in the past and have no connection now whatsoever with PBA except that it acted as an underwriter in connection with the issuance of the common stock of PBA, sale of which is the center of the controversy involved in suits filed by Miller and Zollman. This being the case, it is clear that PBA failed to make a showing that unless these parties are protected, it would suffer irreparable harm and would be seriously handicapped in its efforts to achieve rehabilitation under Chapter 11. Therefore, it is not entitled to the relief it seeks in its Complaint, with the exception of the relief concerning the President, Mr. Van Arsdale.

PBA's reliance on the case of *In re Baldwin-United,* 765 F.2d 343 (2d Cir.1985), is misplaced. In this case, the Court of Appeals merely held that a non-bankruptcy forum cannot prevent a debtor from seeking relief in a bankruptcy court under § 105 and it is only the bankruptcy court who has the power and jurisdiction to determine whether or not the stay imposed by the automatic stay by § 362 applies to a particular law suit. *Baldwin-United* does not suggest that non-debtors are entitled, as a matter of law, to be protected by injunction issued pursuant to § 105 or that

before such relief can be granted, the moving party does not have the burden to establish all the necessary elements for the issuance of a preliminary injunction. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Complaint filed by PBA against Miller and Zollman is dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from Stay for cause be, and the same hereby, is denied without prejudice and Miller shall not proceed against PBA but only in accordance with the terms of the stipulation. It is further

ORDERED, ADJUDGED AND DECREED the Motion for Final Relief from Stay filed by Zollman be, and the same hereby, is denied without prejudice. It is further

ORDERED, ADJUDGED AND DECREED that Miller and Zollman hereby are enjoined and restrained from undertaking any steps directly against C. Bill Gregg, Chairman of the Board and Chief Operating Officer, but may proceed and take whatever steps are necessary to prosecute its lawsuit against the other Defendants. It is further

ORDERED, ADJUDGED AND DECREED that in light of the Stipulation entered in this case between Miller and PBA, Miller shall not proceed with its lawsuit unless in light of this ruling, he intends to cancel the Stipulation. In that event, Miller is also prohibited from proceeding against Van Arsdale, but permitted to proceed against the remaining Defendants.