In the Matter of Marvin Augustus DAVIS, Jr., Linda Dale Davis, Debtors.

Marvin Augustus DAVIS, Jr., Linda Dale Davis, Plaintiffs,

v.

Donald SHELDON, d/b/a C.N.C. Insurance Company, Carlton Walls, d/b/a Manlove Automotive Services, Inc., Dana G. Lane, d/b/a U. L. Harmon Company, and Richard S. Gebelein, Attorney General, State of Delaware, Defendants.

Bankruptcy No. 81-175.
Adv. No. 81-41.

United States Bankruptcy Court,
D. Delaware.

Nov. 10, 1981.

Eric M. Doroshow, Wilmington, Del., for debtors/plaintiffs.

Richard J. McMahon, Deputy Atty. Gen., Wilmington, Del., for defendants.

MEMORANDUM DECISION

HELEN S. BALICK, Bankruptcy Judge.

Plaintiffs' complaint seeks a permanent injunction against the prosecution in any state court of four criminal charges against Marvin A. Davis, Jr. Each of the defendants, Donald Sheldon, d/b/a C.N.C. Insurance Company, Carlton Walls, d/b/a Manlove Automotive Services, Inc., Dana G. Lane, d/b/a U. L. Harmon Company initiated these actions by the filing of a criminal complaint in a justice of the peace court. The cases were transferred at Davis' request to the Court of Common Pleas where they are prosecuted by the Attorney General of the State of Delaware rather than by the individual creditor as state law permits in a justice of the peace court. Each complaint charges Marvin A. Davis, Jr., with issuing a bad check, a Class A Misdemeanor, in violation of 11 Del.C. § 900(2).

Davis together with his wife, filed a Chapter 7 (liquidation) proceeding on April 14, 1981. U. L. Harmon, Inc. was listed as an unsecured creditor in the original schedules. Manlove Automotive Services, Inc. and C.N.C. Insurance Company were added as unsecured creditors by amendment on June 17. Harmon's complaints were filed the day before Davis filed his bankruptcy petition; Manlove and C.N.C.'s were filed after the petition was filed but before they were scheduled as unsecured creditors.

The alleged bad checks were payments on the kind of debts dischargeable in a bankruptcy proceeding. Each creditor received notice from the court of his right to file, within specified times, either a complaint objecting to Davis' discharge or a complaint requesting a determination of the dischargeability of his claim. No complaints were filed and the Davises were granted a discharge on July 28, 1981.

If there is a conviction under 11 Del.C. § 900(2), the sentencing court in addition to discretionary punishment under 11 Del.C. § 4206(a) must order the defendant to make restitution to the person to whom the worthless check was issued.

The crux of plaintiffs' argument is that these individual creditors are attempting to impair the jurisdiction of the bankruptcy court by using the criminal law to collect a debt discharged in a bankruptcy proceeding.

Davis contends that: the mandatory requirement of restitution causes the actions to be civil in nature; the actions are automatically stayed by 11 U.S.C. § 362(a); and since none of the creditors sought a determination of non-dischargeability, the discharge order prohibits these creditors from pursuing these actions.

■ The State Legislature has decided that the issuance of a check with knowledge that it will not be honored by the drawee is a misdemeanor. Neither the fact that a private individual may prosecute nor that restitution must be ordered upon conviction alters the kind of proceeding pending in the state court. Consequently, the state court proceedings are criminal actions which are removed from the effect of the automatic stay by § 362(b)(1).[1]

Alternatively, Davis argues that this court should issue a permanent injunction under its broad equitable powers so that the individual creditors cannot accomplish through the criminal justice system what they are now prohibited from doing civilly, i. e. the collection of their claims.

The other side of the coin is—should the State be prevented from enforcing its criminal law because of the mandatory restitution requirement.

Each criminal action was filed before that creditor had received notice of the bankruptcy filing. The mandatory restitution aspect of 11 Del.C. § 4206(a) was the principal reason each individual creditor filed a criminal complaint. There was no showing that these creditors intended to subvert the bankruptcy law nor that any state official has not or would not properly perform his duties under the law. There is only the specter of restitution until the state has proven beyond a reasonable doubt that Davis is guilty. If there is a guilty verdict, restitution would be part of a judgment of conviction—the penalty for violating the law. No debt nor debtor/creditor relationship would be created. Davis could not be sued. Any failure to comply with the sentence would be either a violation of probation or contempt.

Although Congress has given bankruptcy courts power and authority to issue any order necessary or appropriate to carry out the provisions of title 11 of the United States Code (11 U.S.C. § 105, 28 U.S.C. § 1481), it did not confer any criminal jurisdiction. Its enactment of § 362(b)(1) clearly reflects a strong policy against federal interference with state court criminal prosecutions and is consistent with the policy of making bankruptcy available to financially pressed individuals but not a shelter from the consequences of criminal acts.

■ A court that has no criminal jurisdiction should rarely, if ever, issue a permanent injunction against the enforcement of the criminal law. The issuance of a bad check with knowledge is a criminal act. The mere possibility that a creditor may recover all or part of a discharged debt only after a debtor's conviction does not thwart the purposes of the bankruptcy laws. The plaintiffs' request for a permanent injunction must be denied.

## APPENDIX

11 Del.C. § 900. Issuing a bad check; class A misdemeanor.

A person is guilty of issuing a bad check when he issues or passes a check knowing that it will not be honored by the drawee. For the purposes of this section, as well as in any prosecution for

1. "(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;"

theft committed by means of a bad check, it is prima facie evidence of knowledge that the check (other than a postdated check) would not be honored that:

(1) * * *

(2) Payment was refused by the drawee upon presentation because the issuer had insufficient funds or credit, and the issuer failed to make good within 10 days after receiving notice of that refusal.

Issuing a bad check is a class A misdemeanor.

11 Del.C. § 4206. Sentence for misdemeanors.

(a) The sentence for a class A misdemeanor shall be fixed by the court and shall not exceed 2 years imprisonment and such fine or other conditions as the court may order; provided, however, that the court shall require a person convicted of issuing a worthless check under $900 of this title to make restitution to the person to whom the worthless check was issued.