In re TICKET PLUS, INC., Debtor.

TICKET PLUS, INC., and Mary Ann Zurenda and Donald R. Zurenda, Sr., Plaintiffs,

v.

Thomas J. MAKOUL, Makoul Productions, Inc., Defendants.

Bankruptcy No. 5–89–00069.
Adv. No. 5–89–0015.

United States Bankruptcy Court, M.D. Pennsylvania.

Aug. 18, 1989.

John H. Doran, Wilkes–Barre, Pa., for Ticket Plus.

Stuart T. Shmookler, Allentown, Pa., for Makoul.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

This matter is before the Court on complaint of the debtor, Ticket Plus, Inc.; and officers of the debtor, Mary Ann Zurenda and Donald R. Zurenda, Sr. (hereafter "plaintiff") requesting a permanent injunction to prevent the defendant, Thomas J. Makoul, Makoul Productions, Inc. (hereinafter "defendant") from proceeding with criminal charges in state court brought against the plaintiff by defendant alleging both the issuance of bad checks and theft by failure to make required disposition of funds. For the reasons provided herein, we deny plaintiff's request for a permanent injunction.

## FINDINGS OF FACT

1. The defendant is in the business of concert promotion.

2. During a period of approximately one year prior to the filing of the above referenced bankruptcy case, the plaintiff sold concert tickets on behalf of defendant for approximately 20 to 25 concerts.

3. Plaintiff sold the concert tickets at face value plus commission.

4. Plaintiff would remit to defendant the face amount of the ticket and retain the commission.

5. Pursuant to the above business relationship and on or about August 30, 1988, plaintiff issued to defendant two checks in the amounts of $40,000 and $22,060, respectively.

6. The check in the amount of $22,060 was post-dated to September 6, 1988.

7. The check was deposited by defendant on September 6, 1988, but was returned by the bank unpaid because of insufficient funds.

8. The check was deposited for a second time and once again returned unpaid.

9. On or about October 24, 1988, the defendant swore out an arrest warrant affidavit before a Magistrate in District Court 11–3–08.

10. Thereafter, on numerous occasions, the Magistrate contacted the plaintiff and made inquiry to determine whether or not payment could be made on the check. Defendant also made numerous requests that plaintiff make payment on the check.

11. On February 1, 1989, the debtor filed a voluntary Chapter 11 petition.

12. On February 2, 1989, two criminal complaints were issued by the Magistrate alleging in one instance a bad check charge and in the other a charge of theft for failing to make proper disposition of funds.

13. The bankruptcy petition was filed approximately five months after the issuance of the bad check and approximately

four months after the arrest warrant affidavit was sworn out by defendant.

## DISCUSSION

The plaintiff advances arguments which are traditionally made in this type of adversary case. The plaintiff argues that the defendant is in violation of 11 U.S.C. § 362 because the criminal proceedings were instituted for the sole purpose of collecting an unsecured claim with the possible result that plaintiff might receive a preference over all other creditors. , Further, plaintiff argues that the criminal actions against its officers will substantially impair plaintiff's ability to reorganize because of the necessity of devoting time to defending the criminal charges. Finally, plaintiff argues it will suffer immediate irreparable injury and loss if the injunction does not issue.

The defendant responds that the criminal charges were brought against the non-debtor principals of the debtor corporation and, therefore, there was no violation of the provisions of 11 U.S.C. § 362. Defendant argues that the principles of equity and comity dictate that only in limited circumstances should this court enjoin a state court proceeding and that, in this particular case, plaintiff has not alleged sufficient facts to show irreparable harm to the estate or that the estate has no adequate remedy at law. Finally, by relying on *In re Davis* at 691 F.2d 176, 179 (3rd Cir. 1982), plaintiff argues that in the absence of a showing of bad faith, defendant ·is presumed to have filed its state court action in good faith and that the costs, anxiety and inconvenience of defending a good faith criminal prosecution does not constitute irreparable harm.

We start our discussion by noting that plaintiff has not named the District Attorney as a defendant. This court has previously held that there are circumstances in which a creditor may be permanently enjoined from participating in a criminal prosecution of a debtor when the creditor is seeking to utilize the criminal process as a means of extracting a preference not afforded to other creditors similarly situated. See *In re Bicro v. Mackes*, 105 B.R. 255 (Bankr.M.D.Pa.1988). In *Bicro*, and in cases upon which *Bicro* relied, the court focused on both the timing of the institution of the criminal proceedings and the creditor's motivation in bringing the criminal charges. In *Bicro*, this court found that the clear intent of the creditor was to extract a preference over all other creditors after the creditor determined it would receive nothing from the administration of the bankruptcy case. The facts of this case present a situation entirely different from that in *Bicro*. In the instant case we are asked to find that a particular creditor, utilizing all rights granted to it under state criminal law prior to a bankruptcy petition being filed has acted in bad faith and is trying to thwart the effect of the bankruptcy law. This court recognizes that in many situations, the institution of criminal proceedings on bad checks will result in the dropping of the charges should the defendant make restitution to the plaintiff. We note, in this case, the criminal charges were filed one day after the filing of the petition. However, the initial arrest warrant and attempts by the Magistrate to resolve this matter began months prior to the filing of the petition. We do not find, based upon these facts, that defendant's primary motive was to extract a preference over all other creditors by the filing of the criminal complaint. Consequently, based upon the reasoning of the *Bicro* case we find the defendant should not be enjoined from proceeding with the criminal prosecution.

The plaintiff's argument fails to address the primary issue in this case, namely whether the court can enjoin the state, through the District Attorney's office, from proceeding with the criminal prosecution. This court was recently presented the identical issue in the case of *Ropietski v. Lackawanna County District Attorney and Tom Mineo, t/a Mineo Pies*, 101 B.R. 437 (Bankr.M.D.Pa.1989). Because the issues in both cases are substantially the same, we will rely on our reasoning in the *Ropietski* case which provides as follows:

The issue for determination is whether or not this court has authority to issue

an injunction against the State to prevent a state criminal prosecution. While the cases dealing with the issue in question are legion, the leading case in the Third Circuit is *Davis v. Sheldon* found at 691 F.2d 176 (1982). The *Davis* court held that under proper circumstances a bankruptcy court may issue an injunction to prevent a state prosecution. Regardless, relying upon the Supreme Court's Opinion in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the *Davis* court writes that 'it is a basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.' As in the *Davis* case, the debtor argues that should the state court order restitution, Mineo Pies would receive a preferential payment of a debt and would, in fact, be treated better than other creditors in this case. The same arguments were presented in another case in this Circuit, namely, *Ewing Remodeling Center v. Edgar Bayley, Jr., District Attorney and Universal Suppliers, Inc.* filed to Civil Action No. 84–0445, (Slip Opinion rendered by District Judge Rambo dated October 15, 1984). The *Ewing* court also relied on the guidance found in the *Davis* case and, with regard to the issuance of a restitution order cites the following language from *Davis:*

> "The imposition of such a penalty may indeed raise serious questions under the Supremacy Clause of the U.S. Constitution, although we do not reach that question today. The Davises, however, have put forth no evidence that Marvin Davis will be unable to raise the Supremacy Clause challenge in the state court. We decline to presume that the judges of Delaware will disregard the obligation imposed upon them by the federal Constitution."

*Ewing Slip Opinion* at page 2.

Debtor in this case, as did the debtor in the *Ewing* case, also argued that the creditor was primarily seeking a means to receiving payment on its debt as opposed to vindicating the rights of the citizens of the state in a criminal matter. Once again we turn to the *Davis* decision for guidance which provides at Page 179 the following:

> "The state, however, is prosecuting the criminal actions on behalf of all of the citizens of Delaware, to protect the integrity of commercial transactions within the state. The Davises have made no showing that the Attorney General had any reason to doubt the validity of the charges, that he failed to exercise independent judgment in continuing these prosecutions, or that the complaining witnesses had insufficient evidence to support their allegations. We cannot require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution. Under these circumstances the intentions of the complaining witnesses are not controlling in judging the good faith of a criminal prosecution."

Debtor has failed to prove that his request for an injunction is justified under the doctrine of equity jurisprudence enunciated by the Supreme Court in *Younger v. Harris, supra.*

In addition to the principles of equity, this court must consider the concerns of comity. The *Davis* court writes at page 179 the following concerning this issue:

> "In addition to principles of equity, a federal court must consider 'the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire Country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.' *Younger v. Harris,* 401 U.S. at 44, 91 S.Ct. at 750. A federal court should be especially cautious in enjoining state criminal proceedings, because of the state's paramount interest in protect-

ing its citizens through its police power. In this case, there has been no showing that Delaware has acted in bad faith in its prosecution nor any allegation that the Delaware courts have inadequate procedures for hearing the federal challenges to a judgment of restitution."

Plaintiff also argues that it will suffer irreparable injury if required to defend the state court proceedings. The cost, anxiety and inconvenience of defending oneself in a good faith criminal prosecution do not constitute irreparable injury. See *Davis*, *supra*, at p. 178, citations omitted.

Finally, we note that plaintiff argues that the check in question was post-dated, presumably therefore negating any criminal intent and further that there was no requirement of a segregation of funds giving rise to a cause of action for improper disposition of funds. These arguments can properly be made in the state criminal action against the plaintiffs and have no bearing upon this court's determination as to whether or not an injunction should issue.

Based on the foregoing, we conclude that the plaintiff has failed to convince this court why the principles of equity and comity would permit the court to issue an injunction against the state criminal proceeding in question.

This Opinion and Order constitutes the Court's findings of fact and conclusions of law in the above matter pursuant to Bankruptcy R.P. 7052 and Federal Rules of Civil Procedure 52.